# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00098-CV

### Syndy S. Cory, Appellant

### v.

### Brady Independent School District, Appellee

### FROM THE DISTRICT COURT OF MCCULLOCH COUNTY, 198TH JUDICIAL DISTRICT
### NO. 2008069, HONORABLE EMIL KARL PROHL, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Syndy Cory appeals from the trial court's order granting summary judgment in favor of appellee Brady Independent School District in Cory's suit alleging employment discrimination on the basis of age. *See* 29 U.S.C.A. §§ 621-634 (West 2008 & Supp. 2009) (Age Discrimination in Employment Act (ADEA)).[1] We affirm the trial court's order.

## BACKGROUND

Cory began her employment with Brady ISD in 1988 as a clerk in the administrative offices. In 1999, she became a secretary in the maintenance and transportation department,

---

[1] Cory's suit was filed under the ADEA, a federal statute making it unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1) (West 2008). Cory does not raise a parallel claim under the state-law equivalent to the ADEA, the Texas Commission on Human Rights Act (TCHRA). *See* Tex. Lab. Code Ann. §§ 21.001-.556 (West 2006). However, there should be no practical distinction in our analysis here, as we turn to analogous federal law for guidance in claims under the TCHRA. *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). State courts have concurrent jurisdiction over claims under the ADEA. *See* 29 U.S.C.A. § 626(c)(1) (West 2008).

where she ultimately reported to both the transportation director and the maintenance director of the district. In March 2006, a new transportation director, Larry Sellers, was promoted to replace the outgoing director.

The facts surrounding Cory and Sellers's working relationship are largely undisputed. Soon after Sellers became transportation director, Cory complained to the district superintendent, Steve McCarn, that she and Sellers could not get along in the office environment. These complaints prompted McCarn to hold a meeting with Cory and Sellers on August 9, 2006, for the purpose of discussing ways to improve their relationship. On September 5, 2006, Sellers issued two written disciplinary warnings to Cory, both of which appear in the record. Sellers indicated on the disciplinary forms that the first warning was based on "rude behavior" and "insubordination" and that the second warning was based on "purposely not doing assignments in timely [manner]" and the fact that Cory placed the first disciplinary form in her purse before allowing McCarn to review it. Cory maintained in her deposition testimony that there was no basis for Sellers's allegations of rudeness, insubordination, or intentional failure to complete assignments in a timely manner, and further explained that she had placed the first disciplinary form in her purse in order to prevent other people from seeing it before she had a chance to discuss it with Sellers. Cory and Sellers took their dispute regarding the disciplinary warnings to McCarn's office, where another meeting was held in an attempt to improve the parties' working relationship.

On September 27, 2006, McCarn called another meeting with Sellers and Cory, during which he asked them to discuss ways to create a positive work environment, identify areas of concern, and come up with solutions to resolve their conflicts. McCarn then instructed both Sellers and Cory to contact him one week later and provide a status update on their working

relationship. Sellers and Cory each did so by email and both indicated that their working relationship was improving, although Sellers continued to have concerns. At this point, Cory had not yet raised any allegation of employment discrimination, based on age or any other protected category.

On October 27, 2006, Cory sent McCarn a letter requesting that the two disciplinary warnings from Sellers be removed from her file. Cory further stated that Sellers had verbally harassed her on several occasions and that she believed that Brady ISD is not "concerned about the discrimination that is taking place." Cory did not clarify whether she was referring to discrimination based on age, gender, or some other protected category.

Upon receipt of the letter, McCarn immediately called a meeting with Cory to discuss her allegations. He then sent her a formal response on October 31, 2006, stating, in relevant part:

> In your letter you used two words that I had not previously heard from you. First you used the word "harassment" . . . . In the third paragraph you mentioned being "concerned about discrimination that is taking place." . . . I want you to know that through all of our discussions I perceived the working relationship between you and Mr. Sellers as confrontational, but was not made aware, until this point, that you perceived these actions as harassment or discrimination.

McCarn also informed Cory that he had reviewed her personnel file and that the complained-of disciplinary warnings did not appear in the file. He then promised "to conduct a full investigation into the situation" and to provide Cory with a written report of his findings.

Over the next three days, McCarn conducted an investigation into Cory's complaints, interviewing twenty employees in the maintenance and transportation department about Sellers's workplace demeanor and treatment of employees and about Sellers and Cory's relationship in particular. While multiple employees indicated that they had heard arguments between Sellers

3

and Cory escalate into shouting on the part of Sellers, Cory, or both parties, none of the interviewees suggested that Sellers had harassed or discriminated against Cory in any way. Upon completing the investigation, McCarn prepared a written report summarizing his findings and concluding that no harassment or discrimination had occurred. Cory received a copy of this report.

On November 7, 2006, McCarn called another meeting with Cory and Sellers to discuss ways to resolve their conflicts. At Cory's request, another employee in the central office of Brady ISD was present at the meeting.[2] During the meeting, Cory requested that she be provided with a written job description, and Sellers agreed to develop one from which both parties could work to develop a more comprehensive description. Later that same day, Sellers created a written document titled, "Transportation Secretary's Job Description," and provided it to Cory.

On May 3, 2007, Sellers notified McCarn that he did not believe Cory was fulfilling the duties outlined in her job description. McCarn asked Sellers to document the job duties that were not being fulfilled and on June 13, 2007, Sellers provided McCarn with a memorandum stating:

> Syndy Cory has not met the duties of her job description out-lined Nov. 7, 2006.
>
> 1: Continuously updating the PC Bus program did not begin until Feb. 2007.
>
> 2: Changed on her own, Student Ridership Count from Thursday to Wednesday.
>
> 3: Has not downloaded computer data on to CD[]s to save vital info.
>
> 4: Has not helped in finding substitute drivers except on a couple of occasions.
>
> Other office procedures that have been requested from her have not occurred:

---

[2] McCarn's notes from this meeting, as well as the September 27th meeting, appear in the record.

4

Sending messages to me by the way of e-mail. (P.O. Requests, This parent called, Coach has called, and has a question about next week's trip, etc...).

I have asked that certain reports be sent to me thru e-mail as an attachment. This has not occurred.

On many occasions Syndy refuses to follow verbal instructions. She demands that I write them down for her.

Upon receipt of this memorandum, McCarn made the decision to terminate Cory. Cory was provided with a termination letter on June 19, 2007, stating the issues listed in Sellers's memorandum to McCarn. To replace Cory as transportation department secretary, Brady ISD hired Barbara Johnson, a woman approximately five months older than Cory. Brady ISD presented a copy of Johnson's driver's license, including her date of birth, as summary-judgment evidence.

Following her termination, Cory filed a grievance with the Equal Employment Opportunity Commission (EEOC), asserting that Brady ISD fostered a hostile work environment and terminated her based on age and gender. The EEOC dismissed her complaints and provided her with a right-to-sue letter. Cory then filed the present suit against Brady ISD, alleging employment discrimination under the ADEA.[3] Brady ISD filed both traditional and no-evidence motions for summary judgment and the trial court granted summary judgment in favor of Brady ISD without specifying the ground on which it was granted. This appeal followed.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a motion for summary judgment, the movant must

---

[3] Cory's suit did not raise a gender-discrimination claim.

show that there is no issue of material fact and that it is entitled to judgment as a matter of law. *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

A no-evidence motion for summary judgment must be granted if the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which the non-movant would have the burden of proof at trial, and the non-movant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i); *Cox Tex. Newspapers, L.P. v. Penick*, 219 S.W.3d 425, 432-33 (Tex. App.—Austin 2007, pet. denied).

If the order granting summary judgment does not specify the ground or grounds on which the trial court relied for its ruling, we will affirm the summary judgment if any of the theories advanced by the movant are meritorious. *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989).

## DISCUSSION

In her sole issue on appeal, Cory argues that the trial court erred in granting summary judgment because she offered prima facie evidence of discrimination and created a fact issue on whether Brady ISD's stated nondiscriminatory reason for terminating her was pretextual.[4]

A plaintiff in an employment-discrimination suit must first present evidence of a prima facie case of discrimination before the issue of nondiscriminatory reasons for termination,

---

[4] In her appellate brief, Cory does not raise a specific point of error regarding her hostile-work-environment claim, but appears to assert that the "hostile and offensive working environment" she endured at Brady ISD is evidence to support her claim that the stated reasons for her termination were pretextual.

6

pretextual or not, can even be addressed. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 50 n.3 (2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).[5] Where, as here, a plaintiff relies on circumstantial evidence to support her claim, she establishes a prima facie case of unlawful employment discrimination by showing that she (1) is a member of a protected class,[6] (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was replaced by someone outside the protected class. *Shackelford v. DeLoitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999). In the age-discrimination context, the fourth factor is slightly modified, so that "the plaintiff must show that 'she was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of [her] age.' The third alternative of this last element applies in circumstances where the plaintiff is not replaced." *Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996) ("Because the ADEA prohibits discrimination on the basis of age and not class membership, the fact that a replacement is substantially younger than the plaintiff is a far more

---

[5] The Supreme Court "has not definitively decided whether the evidentiary framework of [*McDonnell Douglas*], utilized in Title VII cases is appropriate in the ADEA context." *Gross v. FBL Fin. Servs.*, __ U.S. __, 129 S. Ct. 2343, 2349 (2009). However, because the Supreme Court has never determined that the components of a prima facie case of discrimination as described in *McDonnell Douglas* are not applicable to an ADEA claim and has previously assumed without deciding that the *McDonnell Douglas* framework is applicable, *see, e.g.*, *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000), we will apply it here. *See also Bauer v. Albemarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999) (requiring plaintiff in ADEA case to establish prima facie case of discrimination as described in *McDonnell Douglas*).

[6] For purposes of the ADEA, any individual over the age of 40 is a member of the protected class. *See* 29 U.S.C.A. § 631(a) (West 2008). There is no dispute that Cory was over the age of 40 at all times relevant to the present suit.

reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class.").

In the present case, the summary-judgment evidence reveals that Cory's replacement was not only a member of the protected class, being over the age of 40, but was actually older than Cory. Furthermore, because Cory was replaced, she cannot establish a prima facie case by showing that she was "otherwise discharged because of her age." *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149 (5th Cir. 1995) (distinguishing between a "replacement" case and a "job elimination" case in determining "which version of the final prong of the prima facie case applies"). Even if Cory had not been replaced, the record reflects that she presented no competent summary-judgment evidence that she was discharged because of her age. Her evidence consists solely of four essentially identical affidavits from former Brady ISD employees, each of which makes conclusory statements that Cory "was terminated due to her age" without providing any supporting facts. These affidavits are insufficient to defeat a motion for summary judgment. *See 1001 McKinney Ltd. v. Credit Suisse First Boston Mortgage Capital*, 192 S.W.3d 20, 27 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (stating that conclusory affidavits are insufficient to defeat summary judgment). As a result, we hold that Cory has presented no evidence to support a required element of a prima facie case of age discrimination—that she was either replaced by someone younger, replaced by someone outside the protected class, or otherwise terminated on the basis of age. We therefore overrule Cory's issue on appeal and hold that the trial court did not err in granting summary judgment in favor of Brady ISD.

**CONCLUSION**

We affirm the trial court's order granting summary judgment.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Waldrop and Henson

Affirmed

Filed:   August 31, 2009