# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-09-00454-CV

**Austin Brice, Appellant**

**v.**

**Stephen Hanna and The Other Place, LLC, Appellees**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 274TH JUDICIAL DISTRICT
### NO. C2005-0408C, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We overrule the appellees' motions for rehearing, withdraw our opinion and judgment issued November 5, 2010, and substitute the following in its place.

Appellant Austin Brice appeals from the trial court's orders granting summary judgment in favor of appellees Stephen Hanna and The Other Place, LLC ("TOP") in Brice's suit for false imprisonment and malicious prosecution in connection with his arrest for public intoxication. We reverse the orders granting summary judgment and remand for further proceedings.

## BACKGROUND

On the evening of Brice's arrest, Hanna, an officer with the New Braunfels Police Department, was working off-duty as a security officer for TOP, a condominium complex on the

Comal River. Brice was staying at his parents' condominium in a nearby complex, Camp Warnecke Estates, which shares a common entry street with TOP.

The facts surrounding the arrest are largely disputed. According to Brice, he was studying in his parents' condominium when, shortly after midnight, he decided to take a break and go for a swim in the Comal River. As he was walking from Camp Warnecke Estates to the river, he observed a man standing with a woman on the riverbank and shouting. Brice then jumped into the river and swam for a few minutes before heading back in the direction of his parents' condominium. When he reached the top of the stairs, a few feet away from the condominium, Hanna approached him and asked if he liked to scream. Brice responded that he had not been screaming, but Hanna began to lecture him, stating that Brice "was a smart ass, that [he] had no sense, that [he] was a liar and that [his] whole family was stupid except for [his] younger brother."[1] Hanna then informed Brice that he could have arrested him a few weeks earlier, referencing a prior incident in which Hanna had observed Brice in the hot tub of another nearby condominium complex with some other individuals who were either totally or partially nude.[2]

Brice further alleges that Hanna informed him that if he stepped out of his condominium after consuming any alcoholic beverages, Hanna could arrest him for public intoxication. Brice responded that he had consumed two beers earlier in the day, but had not had any

___

[1] This quotation is taken from Brice's affidavit, which was attached to his summary-judgment response. Brice's version of the facts is presented in both the affidavit and Brice's deposition testimony, while Hanna's version appears in his incident report and the expert affidavit attached to his motion for summary judgment.

[2] Brice maintains that he was not nude himself during that particular incident and that he did not know the other individuals who were nude.

alcoholic beverages for several hours. According to Brice, he offered to take a blood or breath test to verify that he was not intoxicated, but Hanna refused to allow him to do so. Hanna then told Brice that he would arrest him if he came outside at night again, to which Brice responded that Hanna should go ahead and arrest him, as he planned to be out at night in the future. Hanna arrested Brice, handcuffed him, put him in his car, and drove back to TOP, where they waited until New Braunfels police officers arrived and took Brice to the police station. Brice claims that he asked Hanna several times if he could change out of his wet bathing suit into dry clothes, but that Hanna refused to allow him to do so. Brice then spent the night in jail and was bailed out the next morning. According to Brice, the criminal proceeding arising from his arrest was dismissed prior to trial.

Hanna's version of the facts differs significantly from the facts alleged by Brice. According to Hanna, he was working security at TOP when, at approximately 1:00 a.m., he heard shouting and yelling coming from the area of the Comal River. In investigating the disturbance, Hanna approached Brice, whom he recognized from the prior hot tub incident. Hanna and Brice then had a conversation regarding Brice's level of intoxication, during which Brice stated that he had consumed two beers and taunted Hanna to arrest him. Hanna claims that he detected a strong odor of alcoholic beverages on Brice's breath and observed that Brice had slurred speech and bloodshot eyes. When Brice indicated that he intended to continue swimming in the river, Hanna arrested him for public intoxication.

Brice filed suit against Hanna and TOP for false imprisonment and malicious prosecution. After a hearing, the trial court granted summary judgment in favor of both Hanna and TOP. This appeal followed. Brice's four issues on appeal can be summarized as two complaints

3

that (1) summary judgment was improper on the basis of the affirmative defense of official immunity and (2) summary judgment was improper on the claim for false imprisonment because Hanna and TOP have not conclusively negated any element of that cause of action.

## STANDARD OF REVIEW

Summary judgments are reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a motion for summary judgment, the movant must show that there is no issue of material fact and that it is entitled to judgment as a matter of law. *TX Far West, Ltd. v. Texas Invs. Mgmt., Inc.*, 127 S.W.3d 295, 301 (Tex. App.—Austin 2004, no pet.). Evidence favorable to the non-movant is taken as true and every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.*

## DISCUSSION

*TOP's No-Evidence Motion for Summary Judgment*

Before addressing Brice's points of error, we must first clarify the grounds for summary judgment that are properly before us in this appeal. The record reflects that the first summary-judgment motion filed in this case was a no-evidence motion filed by TOP on January 7, 2008. *See* Tex. R. Civ. P. 166a(i). The certificate of service on this motion reflects an incorrect address for Brice's counsel. Brice's counsel did not file a response to TOP's no-evidence motion for summary judgment, and asserts that he was unaware that such a motion existed until he discovered it in the clerk's record on appeal.

On November 18, 2008, Hanna filed a traditional motion for summary judgment. Brice responded to Hanna's motion on December 11, 2008, and the trial court signed an order granting the motion on January 9, 2009. On June 4, 2009, TOP filed a second motion for summary judgment, adopting the arguments made in Hanna's motion. TOP's second motion for summary judgment raised no arguments beyond those asserted in Hanna's motion and made no mention of its previously filed no-evidence motion, for which no hearing had been set and no ruling obtained. Brice filed a response to TOP's second motion on June 29, 2009, adopting by reference his response to Hanna's motion for summary judgment. On July 6, 2009, the trial court signed an order granting TOP's motion for summary judgment, without expressly stating which motion was being granted. The order indicates that only one motion was considered and granted, referring to TOP's "motion," rather than the plural, "motions." Specifically, the order states, "[TOP's] Motion for Summary Judgment has been submitted to and duly considered by the Court. The Court hereby GRANTS [TOP's] motion for summary judgment." At oral argument, there was some disagreement among the parties as to whether the no-evidence motion was argued at the same hearing as TOP's second motion, but Brice has consistently maintained that the no-evidence motion was never heard and that he never received constructive or actual notice of it prior to this appeal.

On appeal, TOP takes the position that the summary judgment in its favor can be affirmed based on the lack of evidence that TOP was vicariously liable for Hanna's actions, a ground presented in its no-evidence motion. Brice argues that summary judgment cannot be affirmed on any ground presented solely in TOP's no-evidence motion because he was not properly served with the motion and had no notice of it until it appeared in the clerk's record on appeal. Where, as here, it

5

appears on the face of the record that notice of a summary-judgment motion was served at the wrong address, we may conclude that the non-movant was never properly served.[3] *See Rozsa v. Jenkinson*, 754 S.W.2d 507, 509 (Tex. App.—San Antonio 1988, no writ). Proper notice to the non-movant is a prerequisite to summary judgment. *Id.*

According to the trial court's order, it considered and granted only one of the motions for summary judgment filed by TOP. This order was issued on July 6, 2009, approximately one month after TOP had filed its traditional motion for summary judgment and one week after Brice had filed a response to that motion. TOP's no-evidence motion, on the other hand, had been pending for eighteen months by that time, had not been properly served on the opposing party, and had elicited no response. Because proper notice is a prerequisite to summary judgment, *see id.*, and the lack of either constructive or actual notice of a summary-judgment motion violates fundamental requirements of due process, we must presume that the motion referenced in the trial court's July 6 order granting summary judgment was TOP's traditional motion, the motion for which Brice had actual notice. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) ("[A] judgment entered without notice of service is constitutionally infirm."); *Tanksley v. CitiCapital Commercial Corp.*, 145 S.W.3d 760, 763 (Tex. App.—Dallas 2004, pet. denied) (stating that lack of notice to non-movant of hearing on motion for summary judgment violates non-movant's due-process rights).[4]

---

[3] While TOP's traditional summary-judgment motion also listed the wrong address for Brice's counsel, the record reflects that Brice received actual notice of this motion, as he promptly filed a response.

[4] For the first time in its motion for rehearing, TOP argues that Brice received proper notice of its no-evidence motion for summary judgment because the certificate of service, while listing the incorrect physical address for Brice's counsel, also included a facsimile number. TOP contends that because Brice does not challenge the correctness of this facsimile number, TOP is entitled to the

While an appellate court may consider summary-judgment grounds not ruled on by the trial court in the interest of judicial economy, we decline to do so under the circumstances presented here, where a no-evidence motion has been filed and the non-movant has not had a proper opportunity to respond. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996). As a result, our review is limited to the grounds for summary judgment presented in Hanna's November 2008 motion and adopted by reference in TOP's June 2009 motion. These motions sought summary judgment on the grounds that (1) the affirmative defense of official immunity defeats Brice's claims of false imprisonment and malicious prosecution, and (2) a necessary element of Brice's claim of false imprisonment has been conclusively negated.

*Official Immunity*

In his first two issues on appeal, Brice argues that Hanna and TOP failed to establish the affirmative defense of official immunity as a matter of law. Official immunity applies to Hanna's actions if they represented (1) discretionary duties, (2) within the scope of his authority as a peace officer, (3) that were performed in good faith. *See Ballantyne v. Champion Builders, Inc.*, 144 S.W.3d 417, 424 (Tex. 2004). To be entitled to summary judgment, Hanna and TOP must have

---

presumption of proper service. While the certificate of service does include a facsimile number, it does not specify whether the motion was served by facsimile, certified mail, hand delivery, or any other permissible method. *See* Tex. R. Civ. P. 21a (identifying methods of service). TOP does not affirmatively represent that the motion was served by facsimile, arguing only that it should be entitled to the presumption of proper service. Brice has consistently maintained that he first received notice of the motion when it appeared in the appellate record. Under the circumstances, and given the absence of any statement in the certificate of service that the motion was indeed served by facsimile, we continue to presume that the motion referenced in the trial court's July 6 order was TOP's traditional motion, the motion for which there is no dispute that Brice had actual notice and an opportunity to respond.

7

established each of these three elements as a matter of law. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 162 (Tex. 2004).

In determining whether the element of good faith has been established as a matter of law, the relevant question is whether a reasonably prudent officer, under the same or similar circumstances, could have believed his conduct was justified based on the information he possessed when the conduct occurred. *Ballantyne*, 144 S.W.3d at 426. To support this element, Hanna relies on the expert affidavit of Albert Ortiz, a former police chief, who averred that after reading Hanna's arrest report and Brice's deposition testimony, he was of the opinion that "Hanna acted as a reasonably prudent officer would have acted under the same or similar circumstances," and that "any reasonable and prudent law enforcement officer could have taken the same or similar actions that were presented to Officer Hanna at the time of the incident."

Our review of the affidavit, however, reflects that Ortiz's opinion was based on the facts as presented by Hanna, rather than the significantly different version of the facts presented by Brice. For example, the affidavit states:

> Officer Hanna had probable cause to arrest Mr. Brice for public intoxication once he observed and could smell the strong odor of intoxicants on the breath of Mr. Brice along with Officer Hanna's observation of Mr. Brice's bloodshot eyes and slurred speech. Any reasonable law enforcement officer faced with these facts could have believed that Mr. Brice was intoxicated and in danger if he went back into the river.

Brice, on the other hand, in the affidavit attached to his summary-judgment response, stated that during his interaction with Hanna, "I was not intoxicated, my eyes were not bloodshot and I had not slurred any words." Brice also alleged in his pleadings and stated in his affidavit that he had

8

requested a blood or breath test to confirm that he was not intoxicated, and that Hanna had refused these requests. Ortiz's affidavit does not address the potential actions or beliefs of a reasonable and prudent police officer under the circumstances as alleged by Brice.

When the expert opinion of another officer is relied upon to establish the element of good faith as a matter of law, the officer's affidavit must address disputed facts in the light most favorable to the suspect. *See Adams v. Downey*, 124 S.W.3d 769, 775 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (stating that "an official fails to conclusively establish good faith when the official's motion for summary judgment relies on expert affidavits that do not address the facts in the light most favorable" to non-movant); *Kistner v. Pfannstiel*, 107 S.W.3d 7, 12-13 (Tex. App.—San Antonio 2002, no pet.) (holding that affidavits based on officers' version of disputed facts cannot be dispositive on issue of good faith); *City of Houston v. Davis*, 57 S.W.3d 4, 7 (Tex. App.—Houston [14th Dist.] 2001, no pet.) (determining that good faith had not been established where expert affidavits were based on officers' "largely controverted version of the facts"). Because Ortiz's affidavit is based solely on Hanna's accounting of disputed facts, it is insufficient to establish the element of good faith.

Given the disputed facts involving the interaction between Brice and Hanna on the night in question and the absence of evidence that a reasonable and prudent officer could have believed Hanna's conduct was justified under the circumstances as alleged by Brice, we hold that a fact issue exists on the issue of good faith, a necessary element of official immunity.[5] *See Kistner*,

---

[5] In light of this conclusion, we need not address the remaining elements of official immunity.

107 S.W.3d at 11 (holding that summary judgment is improper where "there is contradictory proof regarding the material facts" on which party bases claim of good faith). As a result, Hanna and TOP are not entitled to summary judgment on their affirmative defense of official immunity.

*False Imprisonment*

In addition to the issue of official immunity, Hanna and TOP also sought summary judgment on the ground that Brice cannot prove all of the elements of his cause of action for false imprisonment as a matter of law.[6] The essential elements of false imprisonment are: (1) willful detention (2) without consent and (3) without authority of law. *Sears, Roebuck & Co. v. Castillo*, 693 S.W.2d 374, 375 (Tex. 1985). Hanna and TOP assert that the summary-judgment evidence conclusively negates the necessary element that Brice's detention was without legal authority. In his third and fourth issues on appeal, Brice argues that summary judgment cannot be affirmed on this ground because a fact issue exists as to whether Hanna's actions were without legal authority.

Where, as here, an arrest is made without a warrant, legal authority for the arrest must be established by a showing of probable cause. *See Wal-Mart Stores v. Odem*, 929 S.W.2d 513, 519 (Tex. App.—San Antonio 1996, writ denied) ("Legal authority or legal justification is met either by the procurement of an arrest warrant or by the showing of existence of probable cause."). Hanna takes the position that he was acting with legal authority because he had probable cause to believe

---

[6] Hanna's summary-judgment motion did not assert an additional ground for defeating Brice's cause of action for malicious prosecution beyond the affirmative defense of official immunity.

that Brice was committing the offense of public intoxication.  *See* Tex. Penal Code Ann. § 49.02 (West Supp. 2010).

A person commits the offense of public intoxication by appearing in a public place "while intoxicated to the degree that the person may endanger the person or another." *Id.*  In reviewing whether Hanna had probable cause to arrest Brice for public intoxication, we must take as true all evidence favorable to Brice, indulging all reasonable inferences and resolving all doubts in his favor. *See Joe*, 145 S.W.3d at 157.  Under that standard, we must assume that Brice's version of the events as described in his affidavit is true, including the facts that Brice did not have bloodshot eyes or slurred speech when Hanna approached him, that Hanna refused Brice's requests to take a blood or breath test to confirm that he was not intoxicated, and that at the time of his arrest, Brice was walking back to his parents' condominium and "was in no way a danger to [him]self or others." While Hanna's incident report indicates that Brice exhibited slurred speech and bloodshot eyes and smelled of alcoholic beverages, the discrepancy between Hanna's report and Brice's affidavit raises a genuine issue of material fact as to whether there was probable cause to believe Brice was committing the offense of public intoxication, and by extension, whether Hanna was acting with legal authority when he arrested Brice.  As a result, Hanna and TOP have not conclusively negated a necessary element of Brice's cause of action for false imprisonment and are not entitled to summary judgment on that claim.[7]

---

[7] Brice also argues that a fact issue exists as to whether he was in a "public place" when observed by Hanna, as required for public intoxication. *See* Tex. Penal Code Ann. § 49.02 (West Supp. 2010).  In light of our determination that a fact question exists as to whether there was probable cause to believe Brice was intoxicated, we need not address this argument.

11

## CONCLUSION

We reverse the trial court's order granting summary judgment in favor of Hanna and TOP and remand for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Patterson and Henson

Reversed and Remanded on Motion for Rehearing

Filed:   December 10, 2010