**Michael LING, et. al., Appellants**

v.

**BDA&K BUSINESS SERVICES, INC., et. al., Appellees.**

No. 05-07-00414-CV.

Court of Appeals of Texas, Dallas.

July 24, 2008.

David R. Deary, J. Dylan Snapp, Loewinsohn, Flegle & Deary, L.L.P., Dallas, W. Ralph Canada, Jr., Canada-Withrow, L.L.P., Southlake, Joe R. Whatley, Othni Lathram, Whatley, Drake & Kallas, L.L.C., Ernest Cory, Cory Watson Crowder & Degaris, Birmingham, AL, for Appellants.

Mark A. Waite, Beirne, Maynard & Parsons, L.L.P., Houston, for Appellees.

Before Justices O'NEILL, RICHTER, and LANG.

## OPINION

Opinion by Justice RICHTER.

This is a professional negligence case in which appellee accountants prepared tax returns and contend they relied on outside legal opinions concerning tax positions taken in the returns. The parties offer differing characterizations of the professional duty the accountants owed to their clients under these circumstances. The trial court granted a traditional and no-evidence summary judgment in favor of the accountants, BDA & K Business Services, Inc. (the Accountants). In three issues, twenty-two parties, including Michael Ling, other individuals, and their wholly-owned business entities (the Ling parties)

collectively challenge both the traditional and no-evidence summary judgment. We conclude that accountants owe their clients a duty to exercise reasonable care applicable to the accounting profession. Whether an accountant fulfilled his duty to render services in accordance with acceptable professional standards by conforming to the standard of conduct is typically a question of fact. Because the summary judgment evidence raises questions of material fact about whether the Accountants' reliance on outside tax opinions conformed to an accountant's professional standard of conduct, we reverse the trial court's traditional summary judgment on the Ling Group's negligence and malpractice claims and remand the case to the trial court. However, the record does not reflect the time for discovery was inadequate. Therefore, we affirm the trial court's no-evidence summary judgment on the remainder of the Ling Group's claims.

### BACKGROUND

#### A. Factual Background

The Ling Group entered into certain investment transactions known as Market Link Deposit Transactions (the Transactions).[1] In connection with the Transactions, the Ling Group obtained legal opinion letters from counsel (the Opinion Letters). The Opinion Letters provided lengthy and detailed analysis of the legality of the Transactions and the tax positions to be taken.[2] The Opinion Letters also expressly limited any third-party application or reliance, stating:

> The opinions expressed herein are furnished by us solely for the benefit of the Investor, and thus may not be relied

---

1. These transactions are a type of tax shelter.

2. The Ling Group did not retain the same counsel, but the third-party disclaimer is the

same in all of the Opinion Letters contained in this record.

upon or delivered to any person other than the Investor without our express, prior written approval.

After the Transactions were completed, the Ling Group requested the Accountants prepare unaudited and unverified 2001 federal income tax returns. To this end, the Ling Group and the Accountants executed a retention agreement which provided for the preparation of tax returns. The Accountants charged a flat fee of $1,750 for partnership returns and $750 for S–Corporations. The retention agreement states, in pertinent part:

> The returns will be prepared from the data made available to us but will not be audited or otherwise verified by us. Before filing the returns, we suggest that a careful review be made of the information to determine that there are no omissions or misstatements of material facts.

The Ling Group provided the Opinion Letters to the Accountants, but neither the Ling Group nor the Accountants obtained the requisite consent for the delivery of or reliance on the opinions. There is no indication the Accountants were asked to rely on the letters. In the preparation of the tax returns, the Accountants did not perform any additional investigation or analysis and relied solely on the opinions expressed in the Opinion Letters. Upon completion, the returns were forwarded to the Ling Group for review. The cover letter accompanying the returns reminded the Ling Group that the returns were "prepared from data made available to [the Accountants] but [were] not audited or otherwise verified." The letter further advised that the Accountants "relied on the conclusions provided ... by [the Ling Group's] outside legal counsel regarding the validity of the investment and tax posi-

tion taken." As reflected on the returns, the Ling Group claimed a loss resulting from the Transactions.

The Ling Group was subsequently audited, and the Internal Revenue Service (IRS) allegedly disallowed the losses claimed as a result of the Transactions. The record does not show, however, that the Transactions were ever declared invalid. After settling with the IRS, the Ling Group initiated this suit.

### B. Procedural Background

On July 26, 2005, twenty-eight plaintiffs filed an original petition and asserted claims against the Accountants and thirty-one other individual and corporate defendants who allegedly marketed, developed, structured, sold, and confirmed the Transactions. The plaintiffs requested a declaratory judgment and asserted claims for unjust enrichment, breach of contract, breach of fiduciary duty, negligent misrepresentation, professional malpractice, excessive fees and civil conspiracy. The plaintiffs requested damages alleged to result from the transactions, including IRS penalties and interest, fees and premiums paid in connection with the Transactions, and legal and accounting fees incurred as a result of the IRS audit. The civil conspiracy claim was later withdrawn as to the Accountants. The Accountants were severed from the original action on September 11, 2006. In this appeal in the action between the Ling Group and the Accountants, the Ling Group is composed of twenty-two of the twenty-eight plaintiffs who initiated the suit.[3]

On July 26, 2006, the Accountants filed a traditional and no-evidence motion for summary judgment. The Accountants vol-

---

**3.** The trial court granted the Accountants' traditional summary judgment as to the other six plaintiffs because they did not engage the Accountants, and these six plaintiffs did not join in the notice of appeal.

untarily continued the motion twice, and the court granted a third continuance at the Ling Group's' request. On April 28, 2007, the parties entered into a stipulation of facts.

The court conducted a summary judgment hearing on February 9, 2007. Following the hearing, the court entered an order granting the Accountants' traditional and no-evidence motion in full. This appeal followed.

## THE TRADITIONAL SUMMARY JUDGMENT

### A. Standard of Review

The standard for reviewing a traditional motion for summary judgment is well-established. *See Sysco Food Servs., Inc. v. Trapnell,* 890 S.W.2d 796, 800 (Tex. 1994); *Nixon v. Mr. Prop. Mgmt. Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.,* 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). A party moving for traditional summary judgment is charged with the burden to establish that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.,* 644 S.W.2d 443, 446 (Tex.1982). When, as here, the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. *See Carr v. Brasher,* 776 S.W.2d 567, 567 (Tex.1989).

### B. The Negligence and Malpractice Claims

In their first two issues, the Ling Group asserts there were genuine issues of material fact concerning "the existence and violation of duties owed" by Accountants to the Ling Group. Although the Accountants moved for summary judgment on the negligence and malpractice claims, the parties offered different characterizations of the summary judgment issue to be determined by the trial court and continue to advance these differing characterizations on appeal. The Accountants contend the summary judgment issue correctly decided by the trial court was whether the Accountants as tax preparers had an implied duty to provide legal advice and re-analyze the legal opinions furnished by the independent tax attorneys. The Ling Group does not argue the Accountants were obligated to validate the legality of the Transactions or undertake any legal analysis. Instead, they assert the issue was whether the Accountants failed to form a "good faith" belief that the tax positions in the returns were supportable as required under the applicable standard of conduct for accountants. Because this distinction is critical to our analysis, we begin our inquiry with an examination of the pleadings and the relief requested in the motion.

### 1). The Pleadings and the Motion

The 100–page amended petition asserts claims against thirty-two defendants, including the Accountants. In the section entitled "Negligent Misrepresentation and Professional Malpractice," the Ling Group generically asserts that as their lawyers, tax advisors, investment advisors, and accountants, the defendants owed [the Ling Group] a duty to comply with the applicable standards of care and comply with the applicable provisions of their codes of professional responsibility. The petition further asserts that defen-

dants' failure to meet the applicable standards of care caused [the Ling Group] to suffer damages. These generic assertions are followed by forty-four alleged acts or omissions. The petition expressly acknowledges, however, that not all of the acts or omissions are applicable to the Accountants, and specifically identifies those acts or omissions deemed also attributable to the Accountants. These acts or omissions include:

- Advising plaintiffs ... concerning offsetting capital gain and/or ordinary income realized in unrelated transactions;
- Failing to disclose to plaintiffs that if they filed tax returns claiming capital and/or ordinary losses based on the [Transactions], they might be liable for penalties and interest;
- Advising plaintiffs that the capital and/or ordinary losses created by the [Transactions] were legitimate, proper, and in accordance with all applicable tax laws, rules, and regulations;
- Advising, instructing, and assisting in the preparation of filing plaintiffs' tax returns utilizing the capital and/or ordinary losses generated by the [Transactions];
- Advising plaintiffs that their tax returns, which utilized the capital and/or ordinary losses generated by the [Transactions] were prepared in accordance with professional standards and pursuant to IRS guidelines and established legal authorities;
- Failing to disclose existing published authority that purported losses for transactions such as the [Transactions] were improper and not allowable for Federal and/or state income tax purposes;
- Failing to advise the plaintiffs of the Amnesty program ...;

- Failing to ensure that the Transactions ... complied with the applicable state and Federal rules and regulations;
- Failing to comply with their ethical obligations to plaintiffs;
- Violating their respective professional rules of conduct; and
- Providing erroneous legal and tax advice.

Although many of these allegations appear to involve acts or omissions applicable to defendants other than the Accountants, some of the allegations can be construed to describe alleged acts or omissions which support the professional negligence claim against Accountants. But the Accountants' motion for summary judgment neither references nor subsumes these alleged acts or omissions. There is no request for judgment based on the alleged breach of a professional duty of care. Instead, the motion states, "[b]ased on the undisputed facts, the only question presented to the court is whether the [Accountants]—as tax preparers—had an implied duty to provide legal advice ensuring the legality, or illegality, of the Transactions." Thus, the Accountants argued summary judgment was proper because the Ling Group could not establish the existence or breach of the duty as they described it as matter of law.

 Because the summary judgment is silent as to its basis for summary judgment, it is unclear whether the judgment was based on Accountants' characterization of the claim. A defendant moving for summary judgment has the burden of proving there is no material issue of fact relative to the plaintiff's cause of action. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 476–77 (Tex.1995). The specific grounds for summary judgment must be stated in the motion. *See McCon-*

nell v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 339 (Tex.1993). The Ling Group asserted a breach of the professional standard of care applicable to accountants, but the Accountants did not address this claim in their motion. Instead, the Accountants sought summary judgment only on the issue of an implied duty to render legal advice. Thus, to the extent the judgment was based on the Accountants' narrow characterization of the Ling Group's claim as an implied duty to render legal advice, it was erroneous. The proper focus of the inquiry is whether summary judgment was appropriate on the professional negligence claims asserted in the pleadings.

### 2.) Duty

 A claim for professional malpractice is based in negligence. See Cosgrove v. Grimes, 774 S.W.2d 662, 664 (Tex.1989). The elements of a cause of action for negligence are: (1) a legal duty owed by one person to another; (2) a breach of that duty; (3) the breach was the actual cause of injury; and (4) actual injury. See Deloitte & Touche v. Weller, 976 S.W.2d 212, 215 (Tex.App.-Amarillo 1998, pet. denied). The existence of a duty is a question of law for the court to decide from the facts surrounding the occurrence in question. See Greater Houston Transp. Co. v. Phillips, 801 S.W.2d 523, 525 (Tex.1990). Summary judgment is proper when a plaintiff can establish neither the existence nor the breach of a duty as a matter of law. Ginther v. Domino's Pizza, Inc., 93 S.W.3d 300, 304 (Tex.App.-Houston [14th Dist.] 2002, pet. denied).

 Accountants as tax preparers owe their clients a common law duty to exercise reasonable care. See Parker v. Carnahan, 772 S.W.2d 151, 156–57 (Tex. App.-Texarkana 1989, writ denied). The common law duty of care arises as a result of the contract for professional services.

See Averitt v. PriceWaterhouseCoopers, L.L.P., 89 S.W.3d 330, 334 (Tex.App.-Fort Worth 2002, no pet.). This duty of reasonable care requires the accountant to exercise the degree of care, skill, and competence that reasonable members of the profession would exercise under similar circumstances. See University Nat'l Bank v. Ernst & Whinney, 773 S.W.2d 707, 710 (Tex.App.-San Antonio 1989, no writ); Greenstein, Logan & Co. v. Burgess Marketing, Inc., 744 S.W.2d 170, 185 (Tex. App.-Waco 1987, writ denied). The duty is usually discharged by complying with recognized industry standards. Greenstein, 744 S.W.2d at 175.

The Accountants do not dispute the existence of the duty to exercise reasonable care or that an accountant's duty may be discharged by complying with industry standards, including those promulgated by the American Institute of Certified Public Accountants (AICPA). But Accountants argue this duty cannot be expanded to include the duties of a tax attorney. The Accountants also claim the absence of this expanded duty is underscored by the fact that their contractual engagement did not include legal services.

The Accountants' argument confuses the existence of a duty with the discharge of a duty. Duty is a question of whether the defendant has a legally enforceable obligation to comply with a general standard of conduct. See Wyatt v. Kroger Co., 891 S.W.2d 749 (Tex.App.-Fort Worth 1994, writ denied). What a defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty. The Ling Group asserted in their pleadings and summary judgment response that the Accountants failed to conform to the standard of conduct required to satisfy the duty of care. Consequently, simply establishing that there is no duty for an accountant to give legal advice does

not terminate the analysis. Even if there is no duty to analyze legal opinions or give legal advice, the question remains whether the Accountants rendered services in accordance with acceptable professional standards when they relied on the Opinion Letters. The fact that the contract did not obligate the Accountants to give legal advice is similarly inconclusive. Regardless of whether the contract includes additional duties or specific obligations, the common law duty of care remains. Therefore, we will examine the summary judgment evidence to determine whether there were genuine issues of material fact concerning the Accountants' compliance with recognized industry standards of professional conduct.

### 3.) The Professional Standard of Care

In a professional malpractice case, the standard of care and the breach of the standard are established by expert testimony. *See Onwuteaka v. Gill*, 908 S.W.2d 276, 281 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Prellwitz v. Cromwell, Truemper, Levy, Parker and Woodsmale, Inc.*, 802 S.W.2d 316, 318 (Tex.App.-Dallas 1990, no writ); *see also, Greenstein*, 744 S.W.2d at 185 (standard of skill for accountants established by expert testimony). In response to Accountants' motion, the Ling Group submitted the affidavit and supplemental affidavit of J. Lester Alexander, III, a certified public accountant and certified fraud examiner with over twenty-seven years' professional experience. Alexander testified that the standards by which the Accountants are bound are set forth in the AICPA Professional Standards, Code of Professional Conduct, Statements on Standards for Tax Services, and other guidelines issues by the IRS and/or the Treasury Department, including three specifically referenced IRS guidelines. Alexander reviewed and relied on these standards and guidelines in forming

his opinion. Alexander also relied on the deposition testimony of Robert Kipp, a principal with Accountants' firm.

Alexander described the applicable standards for accountants preparing tax returns and specified the ways in which the Accountants failed to comply with these standards. The alleged omissions include: ignoring the implications of information received, failing to discuss with the taxpayers whether they were motivated by the opportunity to profit from the Transactions, failing to determine whether the Transactions were marketed as a tax shelter, and failing to determine whether the Transactions had any practical economic effects. Alexander opined that the Accountants' failure to take these steps and reliance on the Opinion Letters did not satisfy the Accountants' obligations under the AICPA rules.

Alexander further testified that the standards governing the preparation of tax returns require an accountant to independently form a "good faith" belief that the tax positions set forth in the returns are supportable. This includes the accountant's formation of his own professional judgment about the deductablility of material items on tax returns. Alexander points to Kipp's deposition, in which Kipp testified that he made no independent analysis because he was not asked to do so. When asked if he formed a "good faith" belief that the Transactions reflected actual economic losses, Kipp responded that he relied on the Opinion Letters for the analysis of these issues.

The Accountants do not dispute the AICPA standards govern accountants' conduct or that an accountant is required to form a good faith belief concerning the positions taken in a tax return, but point to additional standards that permit an accountant to rely on well-reasoned sources of tax analysis such as a client's legal

opinion letter. In making this argument, Accountants fail to address the disclaimer in the Opinion Letters or the Accountants' reliance on the letters despite the disclaimers. On the other hand, Alexander opines that the Accountants' reliance on the Opinion Letters under these circumstances did not satisfy the Accountants' obligations under the applicable AICPA rules. This conflicting summary judgment evidence raises a question of fact about whether the Accountants' conduct was in accord with the applicable standard of care. *See Green v. Unauthorized Practice of Law Comm.,* 883 S.W.2d 293, 297 (Tex.App.-Dallas 1994, no writ) (fact issue exists when conflicting inferences may be drawn from the summary judgment evidence); *see also,* RESTATEMENT (SECOND) OF TORTS § 328c (1965) (when different conclusions may be reached in action for negligence, whether the defendant has conformed to the required standard of care is question of fact).

The Accountants also argue the Alexander affidavit is deficient because it does not address whether the Transactions were improper or damages resulted from the Accountants' actions. But the Accountants provided no evidence or support for the proposition that the ultimate propriety of the Transactions has any bearing on whether they discharged their general duty to exercise reasonable care. Alexander's affidavit was sufficient to raise questions of material fact and defeat summary judgment. The Ling Group's first and second issues are sustained.

## THE NO-EVIDENCE SUMMARY JUDGMENT

The Accountants moved for a no-evidence summary judgment on the Ling Group's claims for declaratory judgment, breach of fiduciary duty, fraud in connection with the Transactions, negligent misrepresentation, professional malpractice in connection with the Transactions, and breach of contract. In their third issue, the Ling Group challenges the no-evidence summary judgment solely on the basis that there was an inadequate time for discovery.

In support of their motion, the Accountants relied primarily on the parties' stipulation that the Ling Group had no evidence the Accountants were involved in the development, structuring, marketing or sale of any of the Transactions. The Accountants also argued there was no evidence they had breached their contract to prepare the Ling Group' tax returns.

■ In response, the Ling Group challenged the Accountants' characterization of the stipulation, stating they had only agreed they had no evidence *at the present time.* The Ling Group also asserted they should be allowed an adequate opportunity to conduct discovery before they were required to show evidence of their claims. The crux of the Ling Group's argument appears to be that given a sufficient amount of time, they might discover something to support a viable cause of action. The Ling Group did not move for another continuance or even identify the discovery they allegedly required.

■ A no-evidence motion for summary judgment may be granted only after "an adequate time for discovery." *See* TEX.R. CIV. P. 166a(i). But the rule does not require that discovery be completed, only that there was "adequate time." *Id. see also, Dishner v. Huitt–Zollars, Inc.,* 162 S.W.3d 370, 376 (Tex.App.-Dallas 2005, no pet); *Specialty Retailers, Inc. v. Fuqua,* 29 S.W.3d 140, 145 (Tex.App.-Houston [14th Dist.] pet. denied). The adequacy of the time for discovery is determined by the nature of the action, the evidence required, and the length of time the case has been on file. *Id.* We review a trial court's determination that there has been an adequate time for discovery for an

abuse of discretion. *See Restaurant Teams Int'l, Inc. v. MG Secs. Corp.*, 95 S.W.3d 336, 339 (Tex.App.-Dallas 2002, no pet.).

By the time the motion for summary judgment was heard, the case had been on file for nineteen months and the motion itself had been on file for over seven months. The Ling Group took the Kipp deposition and received the Accountants' initial disclosures. The Accountants produced every document the Ling Group requested and volunteered their entire file. The parties agreed to the stipulation of facts. The summary judgment hearing was continued three times before submission of the motion to the court. The Ling Group failed to advise the trial court as to what additional evidence was required and did not seek an additional continuance. On this record, there is no indication the Ling Group did not have adequate time for discovery. The trial court did not abuse its discretion when it concluded there had been adequate time for discovery. The Ling Group's third issue is overruled.

We affirm the no-evidence summary judgment on the Ling Group's claims for declaratory judgment, breach of fiduciary duty, fraud, negligent misrepresentation, and breach of contract. We reverse the traditional summary judgment as to the twenty-two members of the Ling Group who retained the Accountants[4] on the negligence and malpractice claims and remand the case to the trial court for further proceedings consistent with this opinion.

---

4. These parties include: Michael Ling, Charles McDonald, Richard Sweet, LMS Investments X, LLC, LMS Capital Corp., Srinivasa Madala, Madala Investments X, LLC, Robert Flath, Wendy Flath, John Coats, Jane Coats, Lowell Anderson, FCA Investments, LLC, FCA Capital Corp., David Laird, Deborah Laird, Scott G. Baker, Robyn Baker, L & B Investments, LLC, Mark Hinton, Brenda Hinton, and First HR Investments, LLC.